FILED
2019 Apr-26 PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
**SOUTHERN DIVISION**

| | |
|---|---|
| LILLIE HOPSON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION NO.<br>2:17-cv-01070-JEO |

**MEMORANDUM OPINION**

Plaintiff Lillie Hopson was involved in a serious head-on collision with a Jeep operated by United States Postal Service driver Sherry Hanson Green. This Federal Torts Claim Act ("FTCA") case is a consequence of that accident. *See* 28 U.S.C. § 2674. The case was tried before the undersigned and the Court now finds for Hopson and against the United States of America on the negligence claim.

**I.   FACTUAL FINDINGS**

The testimony at trial, including that of Accident Reconstructionist Mary Pamela Sterling, demonstrates that on January 30, 2017, on a rural road in Blount County, Alabama, the Jeep that Green was operating exceeded the posted speed limit on Blount County Road 41,[1] crossed over the double yellow center line,[2] and

---

[1] The posted speed limit was 35 miles per hour. Sterling estimated that Green was traveling at between 48 and 51 miles per hour. (Tr. 37).

1

hit Hopson's vehicle. (Tr. 23, 25-38).³ Her Jeep "overrode" Hopson's vehicle, forcing it backwards and causing it to slide off the road. (*Id*. at 27). Hopson reported being unable to move while confined in the car. Her arms were pinned to her chest and her legs were jammed under the dashboard due to the impact. She was particularly stressed due to her claustrophobia. (*Id*. at 52, 84-85). Emergency personnel had to remove the driver's side doors to get Hopson from the car due to the fact that they had been so severely damaged. (*Id*. at 86). She was placed on a medical board and moved to a waiting helicopter for transportation to the University of Alabama in Birmingham trauma unit. (*Id*. at 87). Hopson has limited memory of these events due to the excruciating pain she was experiencing. (*Id*.).

Doctors determined that Hopson had injuries to her neck, back, and arm. They were not able to begin the necessary medical procedures and surgeries until the next day. Overnight, Hopson was so restless that she had to be restrained. (*Id*. at 88). Her surgeries included repairs for a left radius shaft fracture in her forearm, a wrist fracture, and back fractures. She also had significant bruising. She required two units of blood. (*Id*. at 89). She had two rods and eight screws inserted in her

---

² Specifically, the testimony unequivocally demonstrated that Green's Jeep struck Hopson's car in Hopson's lane almost three feet over the center line.

³ Citations are to the trial transcript located at document 54 in the Clerk's record. It will be referenced herein as "Tr. ___."

back and two plates and twelve screws inserted in her arm due to a severe break. (*Id*. at 92). Hopson remained in the trauma unit for three day and then she was placed in another unit for an additional six days. (*Id*. at 52). Thereafter, she was moved to a rehabilitation unit at St. Vincent's Hospital in Blount County. She stayed there for 17 days. (*Id*. at 54-55). She then resided with her daughter for another week. (*Id*. at 55). During her stay with her daughter, Hopson still had difficulty ambulating and caring for herself. She was able to return home after that with the assistance of home health services for approximately four months. The subrogation amount for her medical bills is $57,607.08.[4] (*Id*. at 141).

Before the accident, Hopson was an active, independent 71 year old individual.[5] (*Id*. at 129). She particularly liked to gamble, traveling to casinos with her niece, sister, and daughter. She also liked to go to music festivals and flea markets. (*Id*. at 60). She actively interacted with her adopted granddaughter. She was able to take care of both the inside and outside of her home. She was able to take care of her granddaughter. She was able to walk on her own and she would drive herself. After the accident, she requires a cane to walk[6] and she drives on a

---

[4] This amount is undisputed.

[5] She did have diabetes, high blood pressure, and arthritis. Prior to the accident, she also had spinal surgery, carpal tunnel surgery, gallbladder surgery, shoulder surgery, and a knee replacement. She previously had qualified for Social Security Disability benefits. She had not worked since 1993. (Tr. 122).

[6] The cane is necessary due to difficulties associated with her balance. (Tr. 103).

limited basis, usually to the local Dollar Store. (*Id*. at 103). She is no longer able to work around the house and is much more limited in her ability to do basic household chores. She can no longer garden. (*Id*. at 61, 65-66). Subsequent to the accident, she also consistently experiences pain in her back, leg, arm, and neck. She also experiences weakness in her legs and finds it necessary to rest more often. (*Id*. at 60).

She has difficulty performing simple tasks such as bathing, dressing, and tying her shoes. (*Id*. at 63, 114-15). She is particularly dependent on her granddaughter and other family members. She does not have the physical ability to interact with her granddaughter like she did previously. She also is not comfortable riding in a vehicle. She also does not visit at her daughter's home despite the fact that she previously visited there frequently. (*Id*. at 66). Her daughter described her situation as not being able to "go," "see," or "do." (*Id*. at 67). Hopson describes the accident as "turn[ing] my life upside down." (*Id*. at 118).

Hopson also experiences daily back spasms if she sits in the same position for too long. (*Id*. at 57-58, 108-09). The hardware used to correct the problems in her back causes discomfort and negatively impacts her ability to sleep. (*Id*. at 130). She also still experiences back pain daily. Her present lifestyle principally consists of reading and watching television. (*Id*. at 110).

At the time of the accident, Hopson's granddaughter, Katie, lived with her. They have lived together for almost Katie's entire life. (*Id*. at 54). Hopson's ability to care for Katie, who now is 11 years old, is more limited. (*Id*. at 79).

## II. DISCUSSION

There are two questions to be resolved in this matter: (1) Is the United States liable for the actions of Green and (2) what is the correct amount of damages if the Court finds the United States liable. Hopson brings two claims, one for negligence and one for wantonness. Her FTCA claims are governed by Alabama substantive law. "Under Alabama law, '[t]he basic elements of any negligence action are: (1) an obligation owed by the defendant to the plaintiff, (2) a breach of the standard of care applicable to that obligation, (3) causation, and (4) damage." *Hilliard v. Huntsville Elec. Util. Bd*., 599 So. 2d 1108, 1110 (Ala. 1992) [quoting *Maharry v. City of Gadsden*, 587 So. 2d 966, 968 (Ala. 1991)]. Furthermore, Plaintiff bears the burden of proof in establishing these elements. *See Brown v. Autry, Greer & Sons, Inc*., 551 So. 2d 1049, 1050 (Ala. 1989)." *Borden v. CSX Transp., Inc*., 843 F. Supp. 1410, 1416 (M.D. Ala. 1993). "The Alabama Supreme Court has defined wantoness as "the conscious doing of some act or the omission of some duty which under knowledge of existing conditions and while conscious that, from the act or the omission of such duty, injury will likely be the probable result ....' *Roberts v.*

*Brown*, 384 So. 2d 1047, 1048 (Ala.1980)." *Webb v. Midland Funding, LLC*, 2013 WL" 360151, *4 (N.D. Ala. 2013).

The first question enumerated above is easily answered. The evidence before the Court clearly demonstrates that Green was operating her vehicle while working for the Postal Service. Her operation of the vehicle was negligent under Alabama law. She crossed over the double center line and struck Ms. Hopson's vehicle. As a direct result of the accident, Ms. Hopson sustained her injuries. The Court does not find, however, that Hopson demonstrated that Green's conduct rose to the level of wantonness as defined by Alabama law.

The answer to the second question is not as simple. Ms. Hopson's counsel asks the Court to award her $1,444,207.00 in compensatory damages. (*See* Doc. 44 at 5). Counsel for the United States requests that the Court "award only modest and reasonable amount of fees or of damages consistent with the evidence." (Tr. 144).

Under the FTCA, the United States is liable to a plaintiff "in the same manner and to the same extent as a private individual under like circumstances ...." 28 U.S.C.A. § 2674. Accordingly, "[t]he components and measure of damages in FTCA claims are taken from the law of the state where the tort occurred...."

*Harden v. United States*, 658 F.2d 1025, 1029 (5th Cir. Unit B 1982)[7] (quoting *Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir. 1979)[8]); *see also* 28 U.S.C. § 1346(b). "[T]here is no formula prescribed by law to calculate non-economic damages. Consequently, the amount awarded for pain and suffering will vary widely from case to case. Such damages 'are largely speculative and difficult of determination, but no one's estimate is better than [the factfinder]'s.'" *Bravo v. United States*, 532 F.2d3 1154, 1171 (11th Cir. 2008) (J. Wilson concurring in part and dissenting in part) (quoting *Winner v. Sharp*, 43 So. 2d 634, 636 (Fla. 1950)).

In evaluating the amount of damages to be awarded, the Court has considered Ms. Hopson's age, physical and mental health before and after the accident, her relationships and interaction with family and friends before and after the accident, her injuries, her permanent disfigurement, her past and future pain, her mental anguish and emotional distress. The Court finds that the impact of the accident that Ms. Hopson sustained was severe, she was traumatized by the events, including being confined to her vehicle immediately after the accident; she experienced numerous significant surgeries and a lengthy recovery period as a result of the accident; and she has permanent injuries and continuing pain. The

---

[7] Decisions by a Unit B panel of the former Fifth Circuit are binding precedent in the Eleventh Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[8] Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

accident radically impacted her lifestyle and personal relationships with family and friends. She also owes $57,607.08 for her medical costs. Accordingly, while it is always difficult for a jury or a court to determine an appropriate measure of damages in such situations, this Court finds that the appropriate measure of damages to compensate Ms. Hopson in this instance is $475,000.00.

**III. CONCLSUION**

Premised on the foregoing, the court finds in favor of Ms. Hopson and against the United States in the amount of $475,000.00. A separate final order in accordance with this finding will be entered.

**DONE**, this 26th day of April, 2019.

*John E. Ott*

          **JOHN E. OTT**
          Chief United States Magistrate Judge